UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
OCT - 7 2009
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JTH TAX, INC.,
d/b/a Liberty Tax Service,

      Plaintiff,

v.                                Case No. 2:08cv21

JONATHAN FEIN,

      Defendant.

## OPINION AND ORDER

On September 2, 2009, the Court held a show cause hearing in the above-referenced matter. For the reasons set forth herein, the Court finds that Defendant has failed to comply in significant respects with this Court's order dated January 23, 2009. Accordingly, the Court hereby enters a civil contempt judgment against Fein.

### I. Factual and Procedural Background

Plaintiff, JTH Tax, Inc., d/b/a Liberty Tax Service ("Liberty"), filed this diversity action against Defendant, Jonathan Fein ("Fein"), alleging that Fein breached a franchise agreement that he entered into with Liberty by continuing to run a similar business, operating under the name "American Tax Service," at the same location as his prior Liberty franchise, and by failing to comply with the other post-termination obligations in the franchise agreement. On December 22, 2008, the Court entered summary judgment in favor of Liberty with respect to liability and equitable relief.

On January 23, 2009, the Court entered its Opinion and Final Order, which awarded Plaintiff monetary damages and clarified the terms of the injunction against Fein. Specifically, the Court ordered Fein, within seven (7) calendar days of January 27, 2009, the date of entry of final judgment, to transfer the telephone number used by Fein's Liberty franchise; to deliver to Liberty all copies, including electronic copies, of customer lists; to deliver to Liberty all Liberty customer tax returns, files and records and copies thereof; to deliver to Liberty its Operations Manual; and not to divulge or use for the benefit of anyone outside the Liberty system any information concerning customers served by Fein's prior Liberty franchise, with the exception of any customers Fein served prior to his franchise agreement with Liberty ("preexisting customers"). Additionally, the Court ordered Fein not to directly or indirectly prepare or electronically file income tax returns, or offer bank products, within his former Liberty Territory or within twenty-five (25) miles of the boundary of such Territory, with the exception of Fein's customers prior to his franchise agreement with Liberty; and not to directly or indirectly, within Fein's former Liberty Territory or within twenty-five (25) miles of the boundary of such Territory, solicit the patronage of any person or entity served by Fein's prior Liberty office, with the exception of Fein's customers prior to his franchise agreement with Liberty, for the purpose of offering such person or entity tax preparation,

electronic filing, or Bank Products. Pursuant to the Order dated February 23, 2009, the permanent injunction against Fein ends on January 27, 2011, two (2) years from the date of judgment.

On March 18, 2009, Liberty filed a Motion to Show Cause and a memorandum in support thereof. In the Motion, Plaintiff alleged that Fein is currently competing with Liberty in violation of the Court's order dated January 23, 2009, and Fein has failed to comply with nearly all of the duties outlined in the order. Defendant responded to Plaintiff's motion on March 30, 2009, and Plaintiff filed its Reply Memorandum on April 1, 2009. After reviewing the record, the Court found that a hearing was warranted and ordered Fein to appear on May 7, 2009, so the Court could determine whether he was in compliance with the Court's order dated January 23, 2009, and if not, why he should not be fined or imprisoned. JTH Tax, Inc. v. Fein, No. 2:08cv21, Doc. No. 88 (E.D. Va. Apr. 10, 2009).

On May 7, 2009, the Court heard evidence on the question of whether Fein was complying with the Court's January 23, 2009 Order. Jeanne Pecora, a corporate paralegal at Liberty, testified that she called American Tax Service and stated that her son had his taxes done at Liberty last year and would like a copy of his return. Ms. Pecora was able to schedule an appointment using a false name to have her and her son's taxes done by Ms. Nixon, despite the fact her and her son's names were not on the preexisting client list. Russell Gardner, an area developer for Liberty Tax, testified that

he also called American Tax Service, and he was not informed that they could only prepare income taxes for certain preexisting clients. Additionally, Mr. Gardner testified that in his role as area developer, he became aware of multiple instances of American Tax Service filing returns of former Liberty customers in calendar year 2008.[1]

The Court ordered additional discovery on May 8, 2009, and held a subsequent evidentiary hearing on September 2, 2009. At the hearing, Jeanne Pecora testified again, in addition to Douglas Granger, director of technical support for Liberty, who testified regarding his inspection of American Tax Service and its computer records. The Court reviewed the testimony from the hearings, the exhibits submitted into evidence by both parties, as well as the designated deposition transcripts, and this matter is now ripe for review.

## II. Analysis

### A. Standard of Review

In a civil contempt proceeding, the petitioning party bears the burden of establishing by clear and convincing evidence that the non-moving party violated the underlying order. Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990). Liberty must prove:

---

[1] Scott Black and Jonathan Fein also testified at the hearing.

> (1) the existence of a valid decree of which the alleged contemnor [Fein] had actual or constructive knowledge; (2) a showing that the decree was in the movant's [Liberty's] favor; (3) a showing that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge of such violations; and (4) a showing that movant suffered harm as a result.

JTH Tax, Inc. v. Lee, 540 F. Supp. 2d 642, 645 (E.D. Va. 2007)(citing Ashcroft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)). The focus of the court's inquiry "is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." Howard Johnson, 892 F.2d at 1516.

### B. Civil Contempt

#### i. Fein had Knowledge of the Court's January 23, 2009 Order in Liberty's Favor

In this case, the first and second of the four Ashcroft factors are not in dispute between the parties. Fein does not argue that the January 23, 2009 Order is not final and valid. Additionally, he does not argue that he lacked knowledge or receipt of the Court's order. In fact, the parties agreed to amend the order to limit the permanent injunction against Fein to end two (2) years from the date of the judgment, demonstrating Fein clearly had knowledge of the order and its terms. See JTH Tax, Inc. v. Fein, No. 2:08cv21, Doc. No. 73 (E.D. Va. Feb. 23, 2009). With regard to the second factor, the decree was without question in Liberty's

5

favor; the Court found Fein liable, granted Liberty money damages, and granted Liberty the equitable relief they requested against Fein.

## ii. Fein Violated the Terms of the Court's January 23, 2009 Order

Liberty has shown by clear and convincing evidence that Fein has violated the terms of the January 23, 2009 Order, satisfying the third factor of Ashcroft. Fein and his staff[2] continued to prepare income tax returns at Fein's former Liberty location, and Fein retained paper and electronic files in violation of the Court's order.

### a. Fein Continues to Operate American Tax Service

Fein failed to comply with the Court's order, as well as his post-termination obligation not to compete with Liberty, by continuing to operate American Tax Service at its Springfield, Massachusetts location. The Court ordered Fein to not directly or indirectly prepare or electronically file income tax returns, or offer bank products, within his former Liberty territory or a twenty-five (25) mile radius of his former Liberty office for two years following the judgment, with the exception of his customers prior to his franchise agreement with Liberty. However, the record

---

[2] During the 2008 tax season (2009 calendar year), Rita Nixon, Richard Authier, Richard O'Brien and Jamal Pressley worked at American Tax Service in Springfield, Massachusetts. For the purposes of this Order, they collectively are referred to as "staff," and the Court does not find it necessary address the issue of whether each person worked as an employee or an independent contractor. See infra Part II.a.

6

before the Court provides ample bases for finding that Defendant's conduct violated the injunction.

Crediting the testimony of Jeanne Pecora and her summary of the reported tax returns completed by Fein's tax group, the Court finds Fein prepared 181 tax returns for individuals who were not preexisting customers out of the Springfield location of American Tax Service, located at 725 Sumner Avenue, in Springfield, Massachusetts, where Fein formerly operated his Liberty franchise. (See Hr'g Tr. Doc. 109, Sept. 2, 2009; Hr'g Tr. Pl's. Exs. 1 and 2.) Though counsel for Defendant suggested that at least some of the 181 clients served by Fein may have been family members of preexisting customers or family members of Fein's staff, neither the non-compete covenant Fein entered into with Liberty, nor the Court's order, made exception for such relatives. Fein's preparation of these tax returns was a blatant violation of the Court's order.

Additionally, Fein admitted to serving clients who were not preexisting customers in his former Liberty territory. (Fein Dep. 94-97, June 11, 2009.) In his deposition, Fein admitted that clients who came into or called the Springfield location and "insisted on seeing" him would be referred to his Boston office. Id. He would then see these former Liberty customers in person in Boston or have them send "their stuff" to him, and he would talk to

them over the phone.[3] Id. Either the client or someone in the Springfield office would send the necessary paperwork to Fein by email, facsimile or mail. Id. Once Fein finished preparing the return, he would "then transmit the done file from the main computer in Springfield." Id. at 83-85.

Fein's preparation and electronic filing of these tax returns violated the Court's order. Through the staff at American Tax Service, Fein received referrals, communicated with clients and electronically filed returns in his former Liberty territory. Though Fein may not have been physically present at his former Liberty Franchise location, he used the staff in such a way that he could continue to serve clients from his former Liberty territory in violation of the Court's order.

Moreover, in addition to violating the Court's decree by preparing tax returns himself, Fein indirectly prepared tax returns through his staff at American Tax Service. The Court ordered Fein not to directly *or indirectly* prepare or file tax returns. Given its context in relation to Fein's non-compete covenant with Liberty, the Court's order clearly prohibited Fein from continuing to operate American Tax Service where he previously had his Liberty franchise. However, throughout the 2008 tax season (2009 calendar

---

[3] Fein prepared tax returns for approximately 150 non-preexisting clients from his former Liberty territory who never met him in person in Boston. (Fein Dep. 95, June 11, 2009.) Approximately fifty (50) former clients traveled to the Boston office and met him in person. Id.

8

year), Fein did just this.

American Tax Service was open for business for the 2008 tax season, approximately January through April 2009. Defendant owned the business and was "in charge," "like any boss." (Authier Dep. 39, 43, June 12, 2009; O'Brien Dep. 23, June 12, 2009.) He collected the fees from clients, retained approximately half of the fee for "overhead," and disbursed the remaining amount to the person who prepared the tax return. (Hr'g Tr. Doc. 91, May 7, 2009.) Fein decided when to open and close the Springfield office, and he decided who had keys and could open the office if he was not present. (O'Brien Dep. 23-25, June 12, 2009.) He helped to ensure there was always a tax professional present during business hours. (Authier Dep. 55-57, June 12, 2009.) He supervised Mr. O'Brien, who answered the phone and made appointments, and he arranged for Mr. Authier to supervise Mr. O'Brien in his absence. (O'Brien Dep. 33, June 12, 2009.) There is no indication that the business relationships among the staff at American Tax Service were any different than the relationships that existed when Fein was a Liberty franchisee.

By owning a tax preparation business at his former Liberty franchise location, Fein operated a business in direct competition with Liberty. Regardless of whether Rita Nixon, Richard O'Brien, Jamal Pressley, and Richard Authier were employees or independent contractors working for American Tax Service, Fein was in a

position of responsibility as owner, he enabled the preparation of tax returns in direct competition with Liberty, and he benefitted financially from the tax preparation services at the Springfield location. Accordingly, Fein's ownership and operation of American Tax Service violated the Court's order that he not indirectly prepare or electronically file income tax returns within his former Liberty Territory.

### b. Fein Retained Liberty Customer Files

The Court ordered Fein to deliver to Liberty all copies, including electronic copies, of Liberty customer lists, tax returns, files, and records, and to deliver Fein's Operations Manual within seven (7) calendar days of January 27, 2009, the date of entry of final judgment. Even so, when Douglas Granger, director of technical support for Liberty, inspected Fein's former Liberty franchise office in Springfield on June 10, 2009, he found Liberty records, operations manuals, tax returns, and electronic files relating to former Liberty customers who were not preexisting clients of Fein's. (See Hr'g Tr. Doc. 109, Sept. 2, 2009.)

Defendant does not dispute that multiple Liberty records and manuals were identified during Mr. Granger's inspection. Id. Though Fein clearly was in violation of the Court's order at that time, Fein since hired Jim Reull to completely and permanently remove all Liberty-related information on the computers identified by Mr. Granger. (See Hr'g Tr. Def.'s Ex. 1 at 1.) Additionally,

Defendant's counsel represented to the Court that the paper documents relating to Liberty customers found in Fein's office were brought to the local Liberty franchise after Mr. Granger's inspection. (See Hr'g Tr. Doc. 109, Sept. 2, 2009.) Therefore, it appears to the Court that after several months of delay, Fein finally has complied with the Court's order that he return all operation manuals and Liberty files not belonging to his preexisting customers.[4]

### iii. Liberty has Suffered Harm as a Result of Fein's Violations

In entering summary judgment in favor of Liberty with respect to liability and injunctive relief on December 22, 2008, the Court found that "Fein's continuing breach of the non-compete and non-solicit covenants constitutes an irreparable harm to Liberty." JTH Tax, Inc. v. Fein, No. 2:08cv21, Doc. No. 67 (E.D. Va. Dec. 22, 2009). By continuing to operate American Tax Service and compete with Liberty, the harm to Liberty clearly remains. See JTH Tax, Inc., 540 F. Supp. 2d at 645-46.

---

[4] As to Fein's intentions, Defendant contends that he believed his continued operation of American Tax Service through his staff was not in violation of the Court's order, and he was unaware that he had Liberty files and operation manuals in his possession after the Court's order. (See Hr'g Tr. Doc. 91, May 7, 2009; Hr'g Tr. Doc. 109, Sept. 2, 2009.) However, in contrast to the credibility of Plaintiff's witnesses, Fein's testimony seemed evasive and less than candid. Regardless, Defendant's intentions are not relevant to whether his conduct was in compliance with the Court's order. Howard Johnson, 892 F.2d at 1516.

### vi. Conclusion

Plaintiff has established by clear and convincing evidence that Defendant has not complied with the Court's order. Accordingly, the Court FINDS Jonathan Fein in civil contempt of its January 23, 2009 Order.

### C. Sanctions

Upon a finding of civil contempt, the court may impose sanctions to coerce the defendant into compliance with the court's order and to compensate the movant for losses sustained. 17 Am. Jur. 2d Contempt § 220; see also, Int'l Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 828-29 (1994) (stating that a civil contempt sanction of imprisonment involves "confining a contemptor indefinitely until he complies with an affirmative command" and that a civil contempt sanction of a fine must compensate "the complainant for losses sustained"). Although courts have broad discretion in fashioning remedies for civil contempt, "which include 'ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees,'" remedies and sanctions must be limited to either a remedial or compensatory purpose. United States v. United Mine Workers of America, 330 U.S. 258, 259, 67 S. Ct. 677, 677 (1947); see also Carbon Fuel Co. v. United Mine Workers of America, 517 F.2d 1348, 1349 (4th Cir. 1975) (explaining that "[c]ivil contempt ... is 'wholly remedial[,]' serves only the purpose of a party litigant,

and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance")(internal quotations omitted); <u>Buffalo Wings Factory, Inc. v. Mohd</u>, 574 F. Supp. 2d 574, 577 (E.D. Va. 2008)(stating the remedies and sanctions for civil contempt must be "limited to either a remedial or compensatory purpose").

### i. Attorney's Fees

The District Court has broad discretion in determining the proper relief for civil contempt, which "includes the right to order payment of attorney's fees as an element of civil contempt damages." See <u>Folk v. Wallace Bus. Forms, Inc.</u>, 394 F.2d 240, 244 (4th Cir 1968). For attorney's fees to be awarded as an element of civil contempt damages, the Court must find that the contemnor had more than mere knowledge of his violation of the Court's order. See <u>Columbia Gas Transmission Corp. v. Mangione Enters. of Turf Valley, L.P.</u>, 964 F. Supp. 199, 204 (D. Md. 1996). "A contemnors refusal to comply with a Court Order must rise at least to the level of 'obstinence [sic] or recalcitrance' before attorney's fees can be ordered." <u>Id.</u> (citing <u>Omega World Travel, Inc. v. Omega Travel, Inc.</u>, 710 F. Supp. 169 (E.D. Va. 1989), <u>aff'd</u>, 905 F.2d 1530 (4th Cir. 1990). This requirement stems from the United States Supreme Court's decision in <u>Alyeska Pipeline Co. v. Wilderness Society</u>, 421 U.S. 240, 95 S. Ct. 1612 (1975), in which the Court "reaffirmed the 'American Rule' which disfavors awards of attorney's fees except in

a limited number of exceptional circumstances, one of which is the 'willful disobedience of a court order.'" Columbia Gas Transmission Corp., 946 F. Supp. at 204 (citing Alyeska Pipeline Co., 421 U.S. at 258, 95 S. Ct. at 1622).

The evidence in this case suggests that Fein's non-compliance resulted from more than just "neglect and carelessness" as was the case in Omega World Travel, but instead rose to the level of "obstinance or recalcitrance" because of Fein's studied indifference to the Court and opposing counsel. The evidence shows that Fein continued to operate American Tax Service in violation of the Court's order directing Fein to not directly or indirectly prepare or electronically file income tax returns, or offer bank products, within his former Liberty territory or a twenty-five (25) mile radius of his former Liberty office for two years following the judgment, with the exception of preexisting customers. Fein not only violated the Court's order by indirectly preparing income tax returns of customers through the use of his staff at American Tax Service, but he admitted to directly preparing income tax returns himself. Further, Fein did not initially comply with the Court's order to return Liberty's customer files and operation manuals. Fein's willful violation of the Court's order prohibiting him from competing with Liberty has clearly risen to the level of "obstinance or recalcitrance." Therefore, the Court believes an award of attorney's fees is warranted.

The Court ORDERS Fein to pay reasonable attorney's fees to Liberty for willfully violating the Court's order. As noted, infra, the Court will hold a hearing for the purpose of determining the proper amount of attorney's fees.

### ii. Disgorgement of Profits

A civil contempt fine, although compensatory, need "not always [be] dependent on a demonstration of 'actual pecuniary loss.'" Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989) (citing Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 455-56, 52 S. Ct. 238, 241-42, cert. denied, 494 U.S. 1029, 110 S. Ct. 1477 (1990)); see also Howard Johnson, 892 F.2d at 1521 (11th Cir. 1990); Connolly v. J.T. Ventures, 851 F.2d 930, 933-94 (7th Cir. 1988). Disgorging profits can be utilized as a means of deterring future violations. See Oral-B Labs., Inc. v. Mi-Lor Corp., 810 F.2d 20, 25-26 (2d Cir. 1987).

The Court has found that Fein prepared at least 181 income tax returns for individuals who were not preexisting customers in violation of the Court's order. The profits Fein has obtained from violating the Court's order are to be disgorged. Requiring Fein's profits to be disgorged will place Fein in the same position he would have been in had he obeyed the Court's order. The Court will order a hearing to determine the proper amount of profits that are to be disgorged.

Accordingly, the Court hereby ORDERS Fein to be disgorged of

the profits he made in violation of the Court's order. The Court further ORDERS counsel for the plaintiff and defendant to jointly contact the Clerk's Office within ten (10) calendar days from the date of this Order to schedule a hearing, to be held within sixty (60) calendar days from the date of this Order, for the purpose of determining the proper amount of attorney's fees and profits that are to be disgorged.

### iii. Extension of Injunction

As stated above, the District Court has broad discretion in fashioning the proper remedy for civil contempt. See Folk, 394 F.2d at 244. It is a basic tenet of law that a wrongdoer should not benefit from his wrongful act. See Restatement (First) of Restitution § 3 (1937) ("A person is not permitted to profit by his own wrong at the expense of another.").

On January 23, 2009, the Court clarified the terms of the injunction to prohibit Fein, inter alia, from competing directly or indirectly with Liberty and to surrender pertinent business records to Liberty's control. Pursuant to the Order dated February 23, 2009, the permanent injunction entered against Fein was to end on January 27, 2011, two (2) years from the date of entry of judgment in the case. Because Fein has not complied with the terms of the Court's order, the Court concludes that the permanent injunction should be extended for an additional eighteen (18) months after January 27, 2011, or until July 27, 2013, so that Fein cannot

benefit from his misfeasance.

Accordingly, the Court ORDERS that the permanent injunction remain until July 27, 2013.

IT IS SO ORDERED.

/s/ F. Bradford Stillman
United States Magistrate Judge

Norfolk, Virginia
October 7, 2009